UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MARIA HART and TRACEE LE FLORE, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | Case No.  2:21-cv-44-RMG<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Maria Hart and Tracee Le Flore ("Plaintiffs"), on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1.  Plaintiffs bring this action on behalf of themselves and a class of all similarly situated consumers against Defendant Navy Federal Credit Union ("NFCU" or the "Credit Union"), arising from NFCU's unfair and unconscionable assessment of Foreign Transaction Fees ("FT Fees") on transactions that are made in the United States.

2.  Besides being deceptive, unfair, and unconscionable, this practice breaches contractual promises made in the Credit Union's adhesion contracts, the "Account Documents" (as defined below).

3.  The Credit Union's Account Documents indicate that FT Fees will only be assessed when an accountholder uses his or her debit card in a foreign county. Specifically, the Credit Union promises that it will only assess FT Fees on Point-of-Sale and ATM transactions "made in foreign

1

countries."

4. An online debit card transaction made by an accountholder physically located in the United States at the time of the transaction is not "made" in a foreign country, it is made in the United States.

5. NFCU breaches its contract when it charges FT Fees on online purchases since the contract states—and reasonable consumers understand—that transactions made while the accountholder is physically located in the United States are not foreign transactions capable of incurring foreign transaction fees.

6. This practice violates NFCU's contract and the covenant of good faith and fair dealing.

7. Plaintiffs and other accountholders have been injured by these practices. On behalf of themselves and the class, Plaintiffs seek damages and/or restitution for the Credit Union's breach of contract and breach of the covenant of good faith and fair dealing.

## PARTIES

8. Plaintiff Maria Hart is a citizen and resident of Johns Island, South Carolina and an NFCU checking account holder.

9. Plaintiff Tracee Le Flore is a citizen and resident of Memphis, Tennessee and an NFCU checking accountholder.

10. Defendant Navy Federal Credit Union is a national credit union with its headquarters and principal place of business located in Vienna, Virginia. Among other things, NFCU is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. NFCU operates banking centers, and

thus conducts business, throughout the United States, including in this district.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class embers exceed $5 million, exclusive of interests and costs, and at least one member of the proposed class is a citizens of a different state than the Credit Union.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because NFCU is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

13. FT Fees are often charged by debit card-issuing retail banks and credit card companies when accountholders use their debit card or credit card while traveling abroad.

14. While consumers might expect to be charged these FT Fees while traveling abroad, they do not expect to be charged these fees when they never leave their house. Indeed, a 2019 survey by personal finance website Wallethub found that 80% of consumers did not realize they could be charged FT Fees on transactions made with merchants in foreign countries while they were located in the United States.

15. This abusive practice is not universal in the financial services industry. Many credit cards, such as USAA, Discover, and Barclay's, do not charge any FT Fees. Similarly, many banks do not charge FT Fees on their debit cards. Banks like Capital One and Boeing Employees' Credit Union do not charge FT Fees on any debit card transaction.

16. And, as discussed below, many of the other banks that do charge FT Fees clearly disclose when they are assessed.

17. Unlike each of those banks and credit unions, NFCU represents it will only charge FT Fees on transactions made while the accountholder is outside of the United States. Indeed, the Account Documents only allow NFCU to charge FT Fees, what the Account Documents call an "International Service Assessment Fee," on transactions made outside of the United States.

A.     **Plaintiffs' Experience**

18. On May 18, 2019, Plaintiff Hart purchased the computer game Minecraft from Mojang.com for $16.95, while at home in Johns Island, South Carolina.

19. Plaintiff Hart understood the transaction to be made in the United States.

20. To her surprise, Plaintiff later learned that Navy Federal assessed a 1% FT Fee on her transaction.

21. Plaintiff Hart received no warning that she would be charged a FT Fee on a purchase made while she was in the United States. To the contrary, Plaintiff Hart reasonably understood from the Account Documents that she would only be charged an FT Fee on transactions made if she was traveling abroad.

22. Likewise, in the midst of the global COVID-19 pandemic, on April 18, 2020, Plaintiff Le Flore purchased KN95 protection masks from shopify.com for $35.90 while at home in Memphis, Tennessee.

23. Plaintiff Le Flore understood the transaction to be made in the United States.

24. To her surprise, Plaintiff later learned that Navy Federal assessed a 1% FT Fee on her transaction.

25. Plaintiff Le Flore had no warning that she would be charged a FT Fee on a purchase

4

made while she was in the United States. To the contrary, Plaintiff Le Flore reasonably understood from the Account Documents that she would only be charged an FT Fee on transactions made if she was traveling abroad.

### B. The Imposition of FT Fees on Transactions Made in the United States Violates the Credit Union's Express Promises and Representations

26. The Account Documents, including the "Fee Schedule" and "Debit Card Agreement" attached hereto as Exhibits A & B, respectively, provide the general terms of Plaintiffs' relationship with the Credit Union, and therein the Credit Union makes explicit promises and representations that FT Fees will only be charged when the accountholders use their debit cards to make a transaction while in a foreign country.[1]

27. The Account Documents explicitly represent that FT Fees will only be assessed when debit card transactions are "made" in foreign countries. First, NFCU's Fee Schedule states:

> International Transactions—Non-Navy Federal ATMs and Point-of-Sale
>
> Point-of-sale and ATM transactions **made in foreign countries**     1% per transaction

Ex. A, Fee Schedule (emphasis added).

28. Likewise, NFCU's Debit Card Agreement makes the same promise:

> Foreign/International Transactions: Transactions using your [debit card] DC **made in foreign countries** will post to your account in U.S. dollars and will be charged an International Service Assessment Fee. This fee will be identified as a separate transaction on your statement. The fee will be assessed on purchases and ATM transactions as follows: a. Transactions **made in foreign countries** will be charged 1.0% of the transaction amount.

Ex. B, Debit Card Agreement (emphasis added).

---

[1] These Account Documents are also incorporated into the Navy Federal checking account agreement, entitled "Membership/Savings/Checking Disclosure Statement", as part of the "disclosed terms and conditions of all accounts or services that you may receive at Navy Federal" that the parties agree to "[b]y signing your original membership application".

29. There is zero indication anywhere in the Account Documents that an online purchase made while the accountholder is in the United States is eligible to incur FT Fees; in fact, the Account Documents explicitly state otherwise

30. Reasonable consumers understand that they will only be charged FT Fees while they are actually abroad, as such fees are called *foreign* transaction fees for a reason.

31. Nowhere does NFCU disclose that the Credit Union will consider a foreign transaction to be "made" where the merchant is located as opposed to where the accountholder is located.

32. This counterintuitive interpretation defies common sense. Indeed, an accountholder often has no idea where an online merchant is located, nor should she be expected to know.

33. An accountholder only has control over her location. To a reasonable accountholder, a transaction is "made" where she swipes her card or enters her card number. The language in the Account Documents, quoted above, reinforce this understanding.

34. Banks and credit unions that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to his account holders—something NFCU never did here.

35. For example, Bank of America provides the following disclosure for its FT Fee:

> Fee applies if you use your card to purchase goods or services in a foreign currency or in U.S. Dollars with a foreign merchant (a "Foreign Transaction"). ***Foreign Transactions include internet transactions made in the U.S. but with a merchant who processes the transaction in a foreign country.***

*See* https://www.bankofamerica.com/salesservices/deposits/resources/personal-schedule-fees/.

36. Similarly, TD Bank expressly discloses that it will charge an FT Fee regardless of where the accountholder is physically located:

> Whenever you use your TD Bank Debit Card or TD ATM Card outside of the

6

> United States to get cash at any non-TD ATM, or to purchase goods or services, or for cash advances, we will charge an International transaction fee equal to 3% of the transaction amount. **This fee will apply whether the TD Bank Debit Card holder or TD ATM Card holder is physically located inside or outside the United States and the merchant is located outside the United States or makes a purchase in a foreign currency or in US currency.**

*See* https://www.feeds.td.com/en/document/oao/pdf/1_fees.pdf.

37. Ally Bank also makes clear that the merchant's location is dispositive for determining when it will assess an FT Fee:

> Cross Border and/or Currency Conversion Transaction Fee. **A "Cross Border" and/or "Currency Conversion" fee applies to any point-of-sale debit and/or ATM transaction originated by any Merchants or ATM Operator located outside the United States**.

*See* https://www.ally.com/resources/pdf/bank/ally-bank-deposit-agreement-upcoming.pdf.

38. Likewise, American Airlines Federal Credit Union engages in the same practice, but also expressly discloses it to accountholders:

> Foreign Transactions: Debit Card purchases and cash withdrawals and ATM transactions made in foreign countries and foreign currencies will be debited from your Account in U.S. dollars. For Debit Card transactions, the rate of exchange between the transaction currency and the billing currency used for processing international transactions will be (i) a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or (ii) the government mandated rate in effect for the applicable central processing date. The exchange rate used on the processing date may differ from the rate that would have been used on the purchase date or statement posting date. A Foreign/International Transaction Fee as set forth in our Fee Schedule will be assessed on all Debit Card international purchase, credit voucher and cash disbursement transactions. *A foreign transaction is any transaction that you complete <u>or a merchant completes on your card</u> outside of the United States, with the exception of U.S. military bases, U.S. embassies or U.S. consulates.*

Attached as Ex. C.

39. South State Bank is yet another bank that clearly tethers its disclosure to the location of the merchant rather than the accountholder:

> VISA USA charges us a 0.8% International Service Assessment on all international transactions, regardless of whether there is a currency conversion. If there is a currency conversion, the International Service Assessment is 1% of the transaction. In either case, we pass this international transaction fee on to you. ***An international transaction is a transaction where the country of the merchant is outside of the USA.***

40.     NFCU provides no such disclosure, and instead, states otherwise, and in so doing deceives accountholders.

    **C. NFCU Abuses Discretion**

41.     To the extent the Account Documents do not explicitly permit the charging of a FT Fees as described above, NFCU exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

42.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that NFCU is prohibited from exercising its discretion to enrich itself and gouge its customers.

43.     Here—in the adhesion agreements, the Account Documents, NFCU foisted on Plaintiffs and its other customers—the Credit Union has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith, NFCU abuses the power it has over customers and accounts and acts contrary to reasonable expectations under the Account Documents when it construes its disclosures so as to allow FT Fees on transactions made while the accountholder is in the United States.

44.     Specifically, NFCU construes FT Fees to include fees such as those assessed to Plaintiffs (and members of the putative class), for transactions initiated by consumers while in the United States. Construing the FT Fees provisions of the Account Documents as such is plainly

unreasonable. By exercising any such discretion in its own favor—and to the prejudice of Plaintiffs and its other customers, the NFCU breaches the reasonable expectation of Plaintiffs and other customers and in doing so violates the implied covenant to act in good faith.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs brings this action on their own behalf and on behalf of all others similarly situated. The Class includes:

> All holders of a Navy Federal checking account who, within the applicable statute of limitation preceding the filing of this lawsuit, incurred an FT Fee on a transaction made in the United States.

46. Excluded from the Class is Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

47. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

48. The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual class members because The Credit Union has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

> a. Whether NFCU charges FT Fees on transactions made in the United States;
>
> b. Whether charging FT Fees on transactions made in the United States breaches the

      Account Documents;

    c. Whether charging FT Fees on transactions made in the United States is deceptive or in bad faith; and

    d. Whether Plaintiffs and other members of the Class have sustained damages as a result of the Credit Union's wrongful business practices described herein, and the proper measure of damages.

49. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to the Credit Union's records. The Credit Union has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

50. It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

51. Plaintiffs' claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by the Credit Union, as described herein.

52. Plaintiffs are more than an adequate representative of the Class in that they have

suffered damages as a result of the Credit Union's improper business practices.  In addition:

a. Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b. There is no conflict of interest between Plaintiffs and the unnamed Class members;

c. They anticipate no difficulty in the management of this litigation as a class action; and

d. Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

53. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

54. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT INCLUDING THE COVENANT
## OF GOOD FAITH AND FAIR DEALING

55. Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

56. Plaintiffs and NFCU contracted for checking account and debit card services, as embodied in the Account Documents.

57. The Account Documents do not permit NFCU to charge FT Fees on transactions made in the U.S., and instead, state that NFCU can only charge FT Fees when a Plaintiff makes a transaction outside of the United States.

58. NFCU therefore breached promises included in the Account Documents as described herein when it charged FT Fees on online transactions made in the U.S.

11

59. Further, parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations. That means that the NFCU is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, NFCU has a duty to honor payment requests in a manner that is fair to Plaintiffs and other accountholders and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the form agreements NFCU foisted on Plaintiffs and other accountholders—NFCU has provided itself numerous discretionary powers affecting Plaintiffs' and other accountholders' accounts.

60. Instead of exercising that discretion in good faith and consistent with Plaintiffs' and other accountholders reasonable expectations, NFCU abuses that discretion to take money out of their accounts without their permission and contrary to their reasonable expectations that they will not be charged FT Fees on transactions made in the United States.

61. NFCU breaches the covenant of good faith and fair dealing by charging FT Fees on transactions made in the United States.

62. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

63. Plaintiffs and members of the Class have sustained damages as a result of the Credit Union's breach of the contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demands judgment against Defendant for themselves and the Class members as follows:

(a) Certifying this matter as a class action;

(b) Designating Plaintiffs as appropriate Class representatives and their counsel as Class Counsel;

(c) Declaring the Credit Union's assessment of FT Fees on purchases made in the U.S. to be wrongful, unfair, and a breach of contract;

(d) Restitution of all relevant Foreign Transaction Fees paid to NFCU by Plaintiffs and the Class, as a result of the wrongs alleged herein an amount to be determined at trial;

(e) Disgorgement of the ill-gotten gains derived by the Credit Union from its misconduct;

(f) Actual damages in an amount according to proof;

(g) Punitive and exemplary damages, if permitted by law;

(h) Pre-judgment interest at the maximum rate permitted by applicable law;

(i) Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

(j) Equitable relief including injunctive relief, and

(k) Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: January 7, 2021               Respectfully submitted,


                                      s/ David M. Wilkerson
DAVID M. WILKERSON
Federal ID No. 7188
Attorney for Plaintiff
The Van Winkle Law Firm
11 N. Market Street
Asheville, North Carolina 28801
Telephone: 828-258-299
Facsimile: 828-257-2767
dwilkerson@vwlawfirm.com

Jeffrey Ostrow*
Jonathan M. Streisfeld*
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Counsel for Plaintiff and the Putative Class*

(**Application for Pro Hac Vice Forthcoming*)

14