IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Maria Hart and Tracee Le Flore, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) Civil Action No.: 2:21-44-RMG |
| v. | ) ) |
| Navy Federal Credit Union, | ) **ORDER AND OPINION** ) |
| Defendant. | ) ) ) |

Before the Court is Defendant's motion to dismiss (Dkt. No. 19). For the reasons set forth below, the motion is granted in part and denied in part.

I.  **Background**[1]

This is a putative class action regarding Defendant Navy Federal Credit Union ("NFCU")'s allegedly wrongful assessment of international service assessment fees ("ISAFs") on checking account holders. Named Plaintiff Maria Hart alleges that by assessing ISAFs on online purchases where account holders are physically in the United States and the merchants are located abroad Defendant breached applicable contracts with account holders. Plaintiff brings this action on behalf of: "All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit, incurred [ISAFs] on a transaction made in the United States." (Dkt. No. 12 ¶ 45). Plaintiff alleges she is a citizen of South Carolina and that

---

[1] On May 26, 2021, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), named Plaintiff Tracee Le Flore voluntarily dismissed her claims without prejudice. (Dkt. No. 23). The Court therefore analyzes Defendant's motion only as it concerns named Plaintiff Maria Hart.

NFCU is a citizen of Virginia. Plaintiff brings one cause of action—breach of contract including the covenant of good faith and fair dealing.

NFCU moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). (Dkt. No. 19). Plaintiff opposes. (Dkt. No. 22).[2] NFCU filed a reply. (Dkt. No. 27).

Defendant's motion is fully briefed and ripe for disposition.

## II.     Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject matter jurisdiction. When presented with a 12(b)(1) motion, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (determination of subject-matter jurisdiction "may be based on the court's review of the evidence"). "The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Friends of Dereef Park v. Nat'l Park Serv.*, No. 2:13-cv-03453-DCN, 2015 WL 12807782, at *4 (D.S.C. Apr. 13,

---

[2] In her opposition, Plaintiff withdraws her punitive damages claim without prejudice. (Dkt. No. 22 at 33) ("Plaintiff concedes for the purposes of her current pleading that a claim for punitive damages is not at issue and agrees not to pursue such relief, without prejudice to amending the pleading to assert a claim for such relief if it is later determined that a claim exists."). The Court will therefore not address NFCU's argument that Plaintiff fails to state a punitive damage claims as the argument is now moot.

2015) (internal citations omitted). The plaintiff has the burden of proving that subject-matter jurisdiction exists. *See Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III. Discussion

#### a. The South Carolina Door-Closing Statue

First, NFCU argues that South Carolina's "door-closing" statute prohibits Plaintiff from representing a national class.

S.C. Code Ann. § 15-5-150 provides:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:
>
> (1) By any resident of this State for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150 (the "door-closing statute").

In *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739-40 (4th Cir. 1980), the Fourth Circuit held that a federal court exercising diversity jurisdiction must apply § 15-5-150 unless countervailing federal considerations are present. The Fourth Circuit confirmed that in *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, n.3 (4th Cir. 1993).[3]

In *Farmer v. Monsanto Corp.*, 353 S.C. 553 (2003), the South Carolina Supreme Court examined whether the door-closing statute limits a class action against a foreign corporation in a state court. In reaching the conclusion that it did, 353 S.C. at 558 ("§ 15-5-150 controls the eligibility of class members in a class action where the defendant is a foreign corporation"), the South Carolina Supreme Court distinguished *Central Wesleyan* and stated that the door-closing statute would not apply to federal suits. Although Plaintiff relies heavily on this dicta, it is not

---

[3] In *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965), the Fourth Circuit originally recognized three countervailing considerations. These considerations included: "(1) the purpose in the grant of diversity jurisdiction of avoiding discrimination against nonresidents; (2) the policy of encouraging a state to enforce the laws of its sister states; and (3) the fact that South Carolina was the only state in the country in which the two defendants could be joined." *See Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980) (discussing *Szantay*). "[T]he Fourth Circuit Court of Appeals [has since] . . . limited . . . *Szantay* balancing to situations in which a plaintiff has no other available forum in which to bring its action." *Cal. Buffalo v. Glennon–Bittan Group, Inc.*, 910 F. Supp. 255, 257 (D.S.C. 1996) (citing *Rollins*, 634 F.2d 740 (noting that the crucial question when applying § 15-5-150 is whether South Carolina might be the only state in which a party could join multiple defendants)).

controlling in this Court. It is the province of the federal courts, not state courts, to determine what law is to be applied in the federal courts. Thus, considering Fourth Circuit case law, the Court finds that the door-closing statute, § 15-5-150, is applicable in this case unless there is a countervailing federal interest as stake.

In *Central Wesleyan*, the countervailing federal policy was the interest in consolidating asbestos litigation. Plaintiff argues that there are countervailing federal policies present in this case such as judicial economy and efficiency. Judicial economy and efficiency will potentially be an issue in every case. These justifications are insufficient to constitute a countervailing federal policy and do not prevent the application of the South Carolina door closing statute in this case.

Given the above, the Court finds that § 15-5-150 applies and that each member of the putative class must meet the requirements of this statute. Therefore, Plaintiff's claims are dismissed to the extent that they purport to bring claims on behalf of a national class. *Farmer* 353 S.C. at 558-59; *see also Spelman v. Bayer Corp.*, No. 7:10-CV-00091-JMC, 2011 WL 13312222, at *5 (D.S.C. Feb. 22, 2011) (applying the door-closing statute at the motion to dismiss stage). NFCU's motion is thus granted on this point.[4]

    b. *Plaintiff's Breach of Contract Claim*

---

[4] In its motion, NFCU presents alternative arguments aimed at limiting Plaintiff's putative class—namely that that the Court lacks personal jurisdiction over NFCU as to non-resident members of the purported class, (Dkt. No. 19-1 at 17-21), and that Plaintiff lacks Article III standing to represent a national class, (*id.* at 21-23). Because the Court finds the door-closing statute applies, the Court need not address these other arguments.

NFCU argues that Plaintiff's Amended Complaint fails to state a claim for breach of contract as it does not identify a legally enforceable contract between Plaintiff and NFCU. NFCU also argues that Plaintiff's Amended Complaint does not adequately allege breach.

The elements of breach of contract under Virginia law[5] are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *JTH Tax, LLC v. Shahabuddin*, 477 F. Supp. 3d 477, 481 (E.D. Va. 2020), *reconsideration denied*, No. 2:20CV217, 2020 WL 6291325 (E.D. Va. Oct. 27, 2020).

Under Virginia contract law, whether a contract is ambiguous is an issue of law for the court to determine. *Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co., LLC*, 276 Va. 346, 666 S.E.2d 527, 530 (Va. 2008). A contract is ambiguous "when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Id.* "Ambiguity is created by the doubleness of meaning of an expression used in a written instrument." *Galloway Corp v. S.B. Ballad Const. Co.*, 250 Va. 493, 464 S.E.2d 349, 354 (Va. 1995) (internal quotation marks, citation, and alterations omitted).

The Court finds that Plaintiff's Amended Complaint adequately alleges the existence of a legally enforceable obligation and its plausible breach. The Amended Complaint adequately alleges that Plaintiff and putative class members held checking accounts with NFCU and used their

---

[5] NFCU contends, and Plaintiff appears to agree, that Virginia law governs Plaintiff's contracts with NFCU. (Dkt. No 19-1 at 13 n.5); (Dkt. No. 22 at 20); *see also* (Dkt. No. 12-2 at 2) ("This Agreement, including any claim or dispute arising under it, shall be governed by federal law and the laws of the Commonwealth of Virginia.").

accounts while making purchases online with NFCU-issued debit cards. The Amended Complaint also adequately alleges that these debit cards were subject to a binding agreement with NFCU. *See* Debit Card Disclosure, (Dkt. No. 12-2) (stating the Debt Card Disclosure is an "agreement" between "you" and NFCU and further stating that "[y]ou must be a Navy Federal Member or joint owner [and] have an open checking account" to use a NFCU debit card); (Dkt. No. 12 ¶¶ 18-21) (alleging a purchase subject to ISAFs); *see also* Schedule of Fees and Charges, (Dkt. No. 12-1).

The Amended Complaint further alleges plausibly that, by assessing ISAFs on account holders for online purchases that were made while the accountholder was physically located in the United States from merchants abroad, NFCU breached its agreements with accountholders. For example, in its Schedule of Fees and Charges, NFCU states that ISAFs will be assessed on "point-of-sale[6] and ATM transactions made in foreign countries." (Dkt. No. 12-1 at 4). At the pleading stage, and considering other allegations in the Amended Complaint, *see* (Dkt. No. 12 ¶¶ 28-29, 35-40), the Court finds this language does not speak with the clarity NFCU ascribes it. *See Video Zone, Inc. v. KF & F Properties, L.C.*, 594 S.E.2d 921, 923 (Va. 2004) (noting "whether a contract provision is ambiguous presents a question of law, not fact" and further noting that "[t]he language of a contract is ambiguous if it may be understood in more than one way or when it refers to two or more thins at the same time") (internal quotation marks omitted). In sum, because "the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim," the Court denies NFCU's motion on this point. *See W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP*, No. 6:17-CV-00018, 2017 WL 2123878, at *5 (W.D.

---

[6] Plaintiff notes that "point of sale" is defined by Merriam-Webster as meaning "of or relating to the *place* (such as a *check-out counter*) where an item is purchased." Merriam-Webster, https://www.merriam-webster.com/dictionary/point-of-sale (emphasis added).

Va. May 16, 2017) (quoting *Martin Marietta Corp. v. International Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992)).

### IV.     Conclusion

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 19) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that Plaintiff's claims on behalf of a national class are dismissed. The motion is otherwise **DENIED.**

**AND IT IS SO ORDERED.**

|  |  |
|---|---|
| June 10, 2021<br>Charleston, South Carolina | s/ Richard Mark Gergel<br>United States District Judge |